# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NIKUNJ PATEL and ANUJA PATEL,<br><br>               Plaintiffs,<br><br>       v.<br><br>UR MENDOZA JADDOU, Director, U.S. Citizenship and Immigration Services; and Antony Blinken, Secretary, U.S. Department of State,<br><br>               Defendants. | Civil Action No. 4:22-CV-11128-IT<br><br>(Leave to file granted on Nov. 16, 2022) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF THE MATERIAL FACTS ............................................................. 3

STATUTORY AND REGULATORY FRAMEWORK ................................................ 4

    A.    Congressional Limitations on Visa Issuance ........................................ 4

    B.    The Process for Obtaining Lawful Permanent Residence ....................... 5

    C.    Retrogression may Occur when Visa Demand Exceeds Supply ............. 7

PROCEDURAL BACKGROUND ............................................................................. 10

STANDARD OF REVIEW ..................................................................................... 11

ARGUMENT ......................................................................................................... 12

    A.    The Court Lacks Jurisdiction Over Plaintiffs' Complaint ..................... 12

        1.    The Administrative Procedures Act does not provide
            Jurisdiction over Plaintiffs' Claims ........................................ 12

        2.    The Court Lacks Subject Matter Jurisdiction because
            Portions of Plaintiffs' Claims are Moot and Plaintiffs Lack
            Standing ............................................................................... 17

    B.    Plaintiffs Fail to State an APA Claim of Unlawful Withholding of
        Agency Action and Fail to Demonstrate Entitlement to Summary
        Judgment on these Counts ................................................................. 21

    C.    Plaintiff Fails to State a Claim for Unreasonable Delay under the
        APA ................................................................................................. 29

CONCLUSION ...................................................................................................... 38

CERTIFICATE OF SERVICE ................................................................................ 39

## **TABLE OF AUTHORITIES**

### **CASES**

*Aljabari v. Mayorkas*,
    No. 21-cv-6645, 2022 WL 2073047 (N.D. Ill. June 9, 2022)............................................ 36, 37

*Angeles v. Johnson*,
    121 F. Supp. 3d 997 (S.D. Cal. 2015)...................................................................... 25, 26

*Anversa v. Partners Healthcare Sys., Inc.*,
    835 F.3d 167 (1st Cir. 2016)....................................................................................... 30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................... 11

*Atieh v. Riordan*,
    727 F.3d 73 (1st Cir. 2013)................................................................................... 12, 26

*Badra, v. Jaddou*,
    No. 22-22465-CIV, 2022 WL 4376331 (S.D. Fla. Sept. 22, 2022)............................... 14

*Bagherian v. Pompeo*,
    442 F. Supp. 3d 87 (D.D.C. 2020).............................................................................. 34

*Bansal v. Chertoff*,
    No. C06-1716RSL, 2007 WL 9775556 (W.D. Wash. Oct. 29, 2007)........................... 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................... 11

*Bernardo ex rel. M & K Engr., Inc. v. Johnson*,
    814 F.3d 481 (1st Cir. 2016), cert. denied, 136 S. Ct. 2487 (2016)............................ 13

*Cheema v. U.S. Citizenship & Immigr. Servs.*,
    No. 4:21-CV-3209, 2021 WL 4553039 (D. Neb. Oct. 5, 2021).................................. 18

*Cruz v. Farquharson*,
    252 F.3d 530 (1st Cir. 2001)...................................................................................... 17

*Desai v. U.S. Citizenship & Immigr. Servs.*,
    No. CV 20-1005 (CKK), 2021 WL 1110737 (D.D.C. Mar. 22, 2021).......................... 36

*Doe, v. Mayorkas*,
    No. 22CV00752ECTDTS, 2022 WL 4450272 (D. Minn. Sept. 23, 2022) ................... 14

*Feliciano-Hernández v. Pereira-Castillo*,
    663 F.3d 527 (1st Cir. 2011)...................................................................................... 11

*Garcia v. USCIS,*
No. 21-cv-2233, 2022 WL 3349151 (N.D. Tex. Aug. 12, 2022) ............................................. 14

*Hernandez v. Ashcroft,*
345 F.3d 824 (9th Cir. 2003) .......................................................................................... 27

*In re Am. Fed'n of Gov't Emps.,*
837 F.2d 503 (D.C. Cir. 1988) .................................................................................. 37, 38

*In re Core Commc'ns, Inc.,*
531 F.3d 849 (D.C. Cir. 2008) ....................................................................................... 30

*Jain v. Renaud,*
No. 21-CV-03115-VKD, 2021 WL 2458356 (N.D. Cal. June 16, 2021) ................................ 35

*Jean v. Garland,* -- F. Supp.,
3d --, 2022 WL 11218046 (D. Mass. Oct. 19, 2022) ..................................................... 18

*Jigar Babaria, et al. v. Antony J. Blinken, et al.,*
No. 22-CV-05521-SI, 2022 WL 10719061 (N.D. Cal. Oct. 18, 2022) ............................. 2, 23

*Jun Lin v. Johnson,*
No. 19CV2878BMCLB, 2019 WL 3409486 (E.D.N.Y. July 29, 2019) ............................... 19

*Kolluri v. USCIS,*
No. 3:20-CV-02897-N, 2021 WL 183316 (N.D. Tex. Jan. 17, 2021) ................................. 33

*Kurakula v. Renaud,*
No. 4:20CV3131, 2021 WL 308189 (D. Neb. Jan. 29, 2021) ........................................... 33

*Lajin v. Radel,*
No. 19CV52-MMA (BLM), 2019 WL 3388363 (S.D. Cal. July 26, 2019) .......................... 35

*Liberty Fund, Inc. v. Chao,*
394 F. Supp. 2d 105 (D.D.C. 2005) .............................................................................. 34

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ................................................................................................ 19, 20

*Mantena v. Johnson,*
809 F.3d 721 (2d Cir. 2015) ............................................................................................ 5

*Markandu v. Thompson,*
No. CV 07-4538 (JLL), 2008 WL 11510675 (D.N.J. June 11, 2008) ............................... 19

*Mashpee Wampanoag Tribal Council, Inc. v. Norton,*
336 F.3d 1094 (D.C. Cir. 2003) ...................................................................................... 31

*Meixian Ye v. Kelly*,
    No. 17 CIV. 3010 (BMC), 2017 WL 2804932 (E.D.N.Y. June 28, 2017) ............................. 19

*Morales Posada v. Cultural Care, Inc.*,
    554 F. Supp. 3d 309 (D. Mass. 2021) ...................................................................... 11

*Morgovsky v. Dep't of Homeland Sec.*,
    517 F. Supp. 2d 581 (D. Mass. 2007) ............................................................... 34, 37

*Museboyina v. Jaddou*,
    No. 4:22CV3169, 2022 WL 4608264 (D. Neb. Sept. 30, 2022) ..................................... passim

*Nat'l Ass'n of Mfrs. v. SEC*,
    800 F.3d 518 (D.C. Cir. 2015) .............................................................................. 33

*Norton v. S. Utah Wilderness*,
    *All.*, 542 U.S. 55 (2004) .................................................................................... 22

*Oakville Dev. Corp. v. FDIC*,
    986 F.2d 611 (1st Cir. 1993) ................................................................................ 17

*Palakuru v. Renaud*,
    521 F. Supp. 3d 46 (D.D.C. 2021), No. 21-5048, 2021 WL 1440155
    (D.C. Cir. Apr. 15, 2021) ......................................................................... 30, 31, 34

*Patel v. Garland*,
    -- U.S. --, 142 S. Ct. 1614 (2022) ...................................................................... 13, 14

*Rabinovych v. Mayorkas*,
    No. 21-CV-11785-AK, 2022 WL 3908951 (D. Mass. Aug. 31, 2022) ................................. 14

*Ray v. Cuccinelli*,
    No. 20-CV-06279-JSC, 2020 WL 6462398 (N.D. Cal. Nov. 3, 2020) ................................ 33

*Sajib v. Renaud*,
    No. 21-CV-07039 (BMC), 2022 WL 1062319 (E.D.N.Y. Apr. 8, 2022) .............................. 19

*Sarlak v. Pompeo*,
    No. CV 20-35 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020) ................................... 34

*Seyhmus Aydemir v. Garland*,
    No. 22-CV-100 (PAC), 2022 WL 4085846 (S.D.N.Y. Sept. 6, 2022) ......................... 30, 31, 35

*Shamsian, et al., v. Ilchert*,
    534 F. Supp. 178 (N.D. Cal. 1982) ..................................................................... 26, 27

*Sidhartha Datta, et al. v. Ur M. Jaddou*,
    No. 2:22-CV-1302-JHC, Dkt. 10, 2022 WL 4547018 (W.D. Wash. Sept. 29, 2022) ............... 3

*Singh v. Jaddou*,
No. 22-CV-1180-RAJ, 2022 WL 4094373 (W.D. Wash. Sept 2, 2022) ........................ passim

*Skalka v. Kelly*,
246 F. Supp. 3d 147 (D.D.C. 2017) ..................................................................... 33, 34

*Tang v. Chertoff*,
493 F. Supp. 2d 148 (D. Mass. 2007) ......................................................................... 16

*Telecomms. Research & Action Ctr. v. FCC*,
("TRAC"), 750 F.2d 70 (D.C. Cir. 1984) .................................................... 30, 36, 37

*Touarsi v. Mueller*,
538 F. Supp. 2d 447 (D. Mass. 2008) ................................................................. 15, 16

*Towns of Wellesley, Concord & Norwood, Mass. v. F.E.R.C.*,
829 F.2d 275 (1st Cir. 1987) ................................................................................ 30, 31

*V.U.C. v. United States Citizenship & Immigr. Servs.*,
557 F. Supp. 3d 218 (D. Mass. 2021) ............................................... 30, 34, 35, 37

*Vorontsova v. Chertoff*,
No. CIV. A. 07-10426-RGS, 2007 WL 3238026 (D. Mass. Nov. 2, 2007) ........................... 34

*Wali v. U.S. Citizenship & Immigr. Servs.*,
No. 4:21-CV-3288, 2021 WL 5041207 (D. Neb. Oct. 29, 2021) ......................... 18, 32, 33, 34

*Wightman v. Springfield Terminal Ry. Co.*,
100 F.3d 228 (1st Cir. 1996) ..................................................................................... 12

*Xiaobin Xu v. Nielsen*,
No. 18-CV-2048 (BMC), 2018 WL 2451202 (E.D.N.Y. May 31, 2018) ............................. 19

*Xiaobing Liu v. Blinken*,
544 F. Supp. 3d 1 (D.D.C. 2021) ........................................................................ 31, 36

*Yavari v. Pompeo*,
No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) ...................... 34

*Yu v. Chertoff*,
No. 07CV0296-LAB RBB, 2008 WL 413269 (S.D. Cal. Feb. 12, 2008) .............................. 17

*Yusupov v. Mayorkas*,
No. 21-CV-4066(EK), 2021 WL 6105720 (E.D.N.Y. Dec. 23, 2021) ................................ 19

*Zixiang Li v. Kerry*,
710 F.3d 995 (9th Cir. 2013) ..................................................................... 8, 17, 24

<u>**STATUTES**</u>

5 U.S.C. § 555(b) ......................................................................................................... 30

5 U.S.C. § 701(a) ..................................................................................................... 12, 13

5 U.S.C. § 706(1) ........................................................................................................ 21

8 U.S.C. § 1151(a) ....................................................................................................... 28

8 U.S.C. § 1151(a)(2) .................................................................................................. 25

8 U.S.C. § 1151(c) ......................................................................................................... 4

8 U.S.C. § 1151(d)(1)(C) ............................................................................................... 4

8 U.S.C. § 1152 ............................................................................................................ 20

8 U.S.C. § 1152(a)(2) ..................................................................................................... 5

8 U.S.C. § 1152(a)(5) ..................................................................................................... 4

8 U.S.C. § 1153(b) ....................................................................................................... 28

8 U.S.C. § 1153(g) ....................................................................................................... 29

8 U.S.C. § 1252 ............................................................................................................ 13

8 U.S.C. § 1252(a)(2)(B) ............................................................................................. 13

8 U.S.C. § 1252(a)(2)(B)(i) .......................................................................................... 13

8 U.S.C. § 1255 .......................................................................................... 13, 23, 24, 25

8 U.S.C. § 1255(a) ................................................................................................. passim

8 U.S.C. § 1255(b) ............................................................................................... 4, 7, 28

8 U.S.C. § 1255(c)(2) ................................................................................................... 10

8 U.S.C. § 1571(b) ................................................................................................. 33, 34

8 U.S.C. §§ 1101-1537 ................................................................................................... 4

8 U.S.C. §§ 1151 ........................................................................................ 4, 20, 24, 28

8 U.S.C. §§ 1154(j) ...................................................................................................... 10

28 U.S.C. § 1331 .......................................................................................................... 12

Pub. L. 101-649...................................................................................................... 4

## RULES

Fed. R. Civ. P. 12(b)(1)..................................................................................... 2, 11

Fed. R. Civ. P. 12(b)(6)........................................................................... 2, 3, 12, 21

Fed. R. Civ. P. 56................................................................................................ 12

Fed. R. Civ. P. 56(a)........................................................................................... 12

## REGULATIONS

8 C.F.R. § 103.2(b)(1).......................................................................................... 6

8 C.F.R. § 245....................................................................................................... 5

8 C.F.R. § 245.1(g)(2)................................................................................. 8, 9, 10

8 C.F.R. § 245.2(a)(4)(ii)............................................................................. 10, 27

8 C.F.R. § 245.2(a)(5)......................................................................................... 10

8 C.F.R. § 245.2(a)(5)(ii)....................................................................... 7, 16, 27

8 C.F.R. §§ 204.5(d)............................................................................................. 6

8 C.F.R. §§ 245.1(g)............................................................................................. 7

22 C.F.R. § 42.51.................................................................................................. 7

## OTHER AUTHORITIES

H.R. 94-1553,
Immigration and Nationality Act Amendments of 1976, p. 27 (1976)......................... 25

The Defendants, Director Jaddou of U.S. Citizenship and Immigration Services and Secretary of State Antony Blinken by and through their attorney, Rachael S. Rollins, provide this memorandum in support of its Motion to Dismiss, in opposition to Plaintiffs' Partial Motion for Summary Judgment, and in support of its own Motion for Summary Judgment.

## I.    <u>INTRODUCTION</u>

This consolidated litigation involves two sets of Plaintiffs—the Patels and the Guptas— who filed Administrative Procedure Act ("APA") lawsuits asserting Defendants U.S. Citizenship and Immigration Services ("USCIS") and U.S. Department of State ("DOS" or "State Department") have unlawfully delayed and withheld adjudication of their employment-based ("EB") Form I-485, Applications to Register Permanent Residence or Adjust Status ("AOS application" or "I-485 application"). Patel Dkt. No. 46 at 1 & Gupta Dkt. No. 13 at 1.

Plaintiffs' first two causes of action attack what they have labeled as Defendants' "Retrogression Policies"[1] and contend that USCIS unlawfully requires a visa number to be immediately available when filing an AOS application and when USCIS completes its adjudication of such application.   Patel Dkt. No. 46, ¶¶ 36-42 & Gupta Dkt. No. 13, ¶¶ 36-42. Further, Plaintiffs assert DOS unlawfully withholds its allocation of a visa number if the applicant does not have a visa number available at adjudication.  *Id.*  Plaintiffs also filed a consolidated partial motion for summary judgment as to these two causes of action, although in such motion they now label the purportedly unlawful statutory implementations as the agencies' "adjudicatory hold policies."[2]  Patel Dkt. No. 55 & Gupta Dkt. No. 19.  In their third cause of

---

[1] Plaintiffs use "Regression Policy" interchangeable with "Retrogression policy". However, these terms are Plaintiffs' characterization. Defendants follow the applicable statutes and regulations.

[2] This term is Plaintiffs' characterization.  Again, Defendants follow the applicable statues and regulations.

action, Plaintiffs assert that USCIS has unreasonably delayed the adjudication of their AOS applications and therefore ask this Court to order Defendants to adjudicate such applications within thirty days or to reserve fiscal year ("FY") 2022 visa numbers. Patel Dkt. No. 46, ¶¶ 138-218, 224-227 & Gupta Dkt. No. 13, ¶¶ 140-220, 226-229.

Plaintiffs' Complaints should be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) and Plaintiffs' consolidated motion for partial summary judgment should be denied as well. Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate as the APA does not provide this Court with subject matter jurisdiction over their first two causes of action as Congress has barred review of Plaintiffs' attack on USCIS' discretionary judgments and decisions related to their AOS applications. Additionally, Plaintiffs' unreasonably delay claims are moot as all FY 2022 visa numbers, except for certain EB-5 visas that are reserved by statute and not relevant here, have been allocated and therefore this Court cannot compel Defendants to adjudicate their applications or request and acquire FY 2022 visas on their behalf.

If this Court determines it has jurisdiction to consider Plaintiffs' first two causes of action, Plaintiffs nonetheless fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and fail to demonstrate their entitlement to judgment as a matter of law. Plaintiffs' challenge to Defendants' long-standing approach to immigrant visa number allocation is contrary to statute, regulation, established policies, and has been rejected by multiple courts. *See Museboyina v. Jaddou,* No. 4:22CV3169, 2022 WL 4608264, at *5 (D. Neb. Sept. 30, 2022) (explaining that the same arguments presented by Plaintiffs were "absurd" and "so flawed that [plaintiff] has no likelihood of success on the merits."); *Jigar Babaria, et al. v. Antony J. Blinken, et al*., No. 22-CV-05521-SI, 2022 WL 10719061, at *5–6 (N.D. Cal. Oct. 18, 2022) (similar arguments were "not supported by the plain language of the statute and would lead to 'absurd results'…").

Plaintiffs also fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) that USCIS has unreasonably delayed its adjudication of Plaintiffs' AOS applications. The district courts across the country that have dealt with similar arguments seeking to enjoin the Defendants' policies regarding visa allocation or to find unreasonably delay in USCIS' adjudication of AOS applications have refused to provide relief.[3]

Dismissal of all causes of action in Plaintiffs' Complaints and denial of their partial motion for summary judgment is warranted. Alternatively, this Court should grant Defendants' motion for summary judgment as to all the claims presented by Plaintiffs in this litigation.

## II.    STATEMENT OF THE MATERIAL FACTS

The Patel Plaintiffs maintain lawful H-1B status. Patel Dkt. No. 46 at 1-2, ¶ 75. Plaintiffs' priority date for their immigrant visas is June 26, 2014. *Id.*, ¶ 66. Plaintiffs filed their AOS applications based on the EB-3 preference category on October 27, 2020. *Id.*, ¶ 86. On September 1, 2022, USCIS issued a Request for Evidence ("RFE") to Plaintiff Nikunj Patel advising him that he needed to submit a Form I-693, Report of Medical Examination and Vaccination Record.[4] *See* Patel Dkt. No. 30 at Exh. C. USCIS urged him to respond "as soon as possible if you would like your case to be considered for visa allocation for this fiscal year, which ends on September 30, 2022." *Id.* The Gupta Plaintiffs are lawfully present in the United States. Gupta Dkt. No. 13, ¶¶

---

[3] *See Chalamalsetty v Jaddou, et al.*, No. 4:22-CV-3182-JMG-CRZ, Dkt. 22 (D. Neb. Sept. 30, 2022), *on appeal*; *Museboyina v. Jaddou, et al.*, No. 4:22-CV-3169-BCB-MDN, Dkt. 22 (D. Neb. Sept. 30, 2022), *on appeal*; *Thigulla v. Jaddou, et al.*, No. 4:22-CV-3168-RFR-SMB, Dkt. 22 (D. Neb. Sept. 30, 2022) *on appeal*; *Sidhartha Datta, et al. v. Ur M. Jaddou* , No. 2:22-CV-1302-JHC, Dkt. 10, 2022 WL 4547018 (W.D. Wash. Sept. 29, 2022); *Geda, et al v. Jadodou*, et al., No. 2:22-CV-4764-MCA-MAH, Dkt. 20, (D. N.J. Sept. 30, 2022); *Tulsiyan v. Jaddou*, No. 0:22-CV-61655-JEM/Becerra (S.D. Fl. Sept. 21, 2022) (ECF 18-5); *Singh v. Jaddou*, No. 22-CV-1180-RAJ, 2022 WL 4094373, at *5 (W.D. Wash. Sept 2, 2022), *on appeal,* Appeal No. 22-35702 (9th Cir. Sept. 30, 2022).
[4] This Form I-693 must be reviewed by USCIS to ensure the AOS applicant is not inadmissible based on any medical or health ground of inadmissibility contained in the Immigration and Nationality Act.

1-2 & 75.  The Gupta Plaintiffs filed their AOS applications with USCIS on October 30, 2020 and have a priority date of November 7, 2012.  *Id.,* ¶¶ 79,85.  They have work authorization.  *Id.,* ¶ 75. Both sets of Plaintiffs' priority dates were current under the September 2022 Visa Bulletin but are no longer current under the October 2022 Visa Bulletin.  Patel Dkt. No. 55 at 2.

### III.    STATUTORY AND REGULATORY FRAMEWORK

#### A. Congressional Limitations on Visa Issuance.

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537, governs how foreign nationals obtain visas to seek entrance and permanently reside in the United States.[5]  *See* Declaration of Andrew Parker ("Parker Decl."), Branch Chief of the Residence and Admissibility Branch, USCIS, attached hereto as Exh. A.  In 1990, Congress created the current numerical allocations for immigrant visa issuance and set a worldwide limitation of 226,00 family-sponsored ("FS") preference categories and 140,000 EB immigrant visas across all five employment-based preference categories each fiscal year.  *See* Immigration Act of 1990, Pub. L. 101-649; 8 U.S.C. § 1151(c) & (d).  While most fiscal years see a relatively small increase in the EB annual limits due to unused FS visas,[6] FY2022 saw a more significant increase to an annual limit of 281,507.  Parker Decl., ¶¶ 5, 20, 23, 25.

---

[5] A visa is a documented authorization issued by the U.S. Department of State to noncitizens seeking admission into the United States.  A visa number is simply a "budgetary device" employed by the State Department in order to avoid exceeding the whole worldwide and per-country limits established by Congress.  *See* 8 U.S.C. §§ 1151, 1152.  When USCIS approves an AOS application, the State Department reduces by one the number of visas available (for that category) in the fiscal year then current.  *See* 8 U.S.C. § 1255(b).

[6] The worldwide level of EB immigrant visas for the current fiscal year may be increased if all the FS immigrant visas were not issued in the previous fiscal year. 8 U.S.C. § 1151(d)(1)(C). When this occurs, the number of unused FS immigrant visas from the previous fiscal year roll over into the current fiscal year EB immigrant visa allotment. These roll-over visas are allocated without regard to the per-country limit only if the number of available visas exceeds demand within a particular category. *See* 8 U.S.C. § 1152(a)(5).

Congress also established a 7% per-country limitation in each EB preference category. 8 U.S.C. § 1152(a)(2), Parker Decl., ¶ 9. As such, no more than 7% of immigrant visas in each preference category can be issued to persons from one country, regardless of the total number of eligible applicants from that country. *Id.* This litigation concerns the EB-2 preference category.[7] This category may receive 28.6 percent of the worldwide EB immigrant visas, plus any visas "not required" for the first EB preference category ("EB-1"). Parker Decl., ¶¶ 6-7.

### B.  The Process for Obtaining Lawful Permanent Residence.

Depending on the category sought, foreign nationals seeking EB lawful permanent residence must generally follow three steps. *See Mantena v. Johnson*, 809 F.3d 721, 724–25 (2d Cir. 2015) (indicating that "(1) the Department of Labor ["DOL"] must issue an alien labor certification to the immigrant's employer ("Labor Certification"); (2) USCIS must approve the employer's immigrant visa petition, filed via Form I-140 (an "Immigrant Petition"); and (3) the immigrant must obtain approval of a Form I-485 application for adjustment of status (an "Application to Adjust Status.")). This case involves step three of this process.

Statutory provisions for the AOS process are contained in Section 1255 of Title 8 of the United States Code and provide roles for both Defendants.  Section 1255(a) requires: "(1) the [noncitizen] makes an application for such adjustment, (2) the [noncitizen] is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a); *see also* 8 C.F.R. § 245 (application procedures).  The determination to adjust a noncitizen's status is made in accordance with Department of Homeland Security regulations and

---

[7] USDOS Employment-Based Immigrant Visas, https://travel.state.gov/content/travel/en/us-visas/immigrate/employment-based-immigrant-visas.html#overview (last visited November 4, 2022).

in the discretion of USCIS.  *See* 8 U.S.C. § 1255(a).  Eligibility for adjustment must be established at the time of filing the AOS application and at the time of adjudication.  8 C.F.R. § 103.2(b)(1). If outside the United States, a foreign national seeks an immigrant visa with DOS through consular processing, rather than through USCIS via the adjustment process.[8]

Depending on the EB immigrant visa classification being sought, either the date on which the labor certification is filed with the DOL, or the date of filing the I-140 immigrant visa petition with USCIS is considered the "priority date" for purposes of determining visa availability. 8 C.F.R. §§ 204.5(d), 245.1(g)(2).  USCIS uses the State Department's Visa Bulletin to determine whether to accept an AOS application as well as to determine whether the agency can make a final adjudication on the application.  Parker Decl., ¶ 12.  The State Department's Bureau of Consular Affairs publishes a monthly Visa Bulletin which sets forth visa number availability for each immigrant visa preference categories.  *See* United States Department of State, The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html (last visited Nov. 8, 2022).  The Visa Bulletin enables applicants to compare their priority date to the dates listed in the charts to determine whether their priority date is "current" for purposes of filing their AOS application, and to determine whether USCIS or DOS may act on their application.[9]   A priority date is considered "current" either when immigrant visa numbers are immediately available to all

---

[8] While Plaintiffs in this litigation applied for AOS with USCIS, the question of visa issuance necessarily involves both pathways to lawful permanent residence as the pool of available immigrant visas covers both consular processing and adjustment of status. *See* Employment-Based Visas, https://www.uscis.gov/sites/default/files/document/guides/Excess_EB_Visas_Infographic.pdf (last visited Nov. 4 2022) (diagram explaining EB visa process at USCIS and DOS).

[9] USCIS, Visa Availability and Priority Dates, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-and-priority-dates (last visited Nov. 8, 2022).

applicants in their preference category or when the applicant's priority date is earlier than the date listed on the Visa Bulletin.

Once USCIS determines that the applicant is eligible for AOS and merits a favorable exercise of discretion as required under Section 1225(a), the USCIS adjudicator enters the case information into a DOS database to request allocation of a visa number as required by Section 1255(b) and 8 C.F.R. § 245.2(a)(5)(ii). Parker Decl., ¶ 40. Specifically, Section 1255(b) provides that "[u]pon the approval of an application for adjustment made under subsection (a), [USCIS] shall record the alien's lawful admission for permanent residence as of the date the order of [USCIS] approving the application for the adjustment of status is made, *and the Secretary of State shall reduce by one the number of preference visas authorized to be issued* under sections 1152 and 1153 of this tile within the class to which the alien is chargeable for the fiscal year then current." 8 U.S.C. § 1255(b) (emphasis added). DOS is responsible for ensuring Congressionally-set limits on visa numbers are followed and therefore monitors the number of available visa numbers. 22 C.F.R. § 42.51, Parker Decl., ¶ 12.

To comply with the statutory commands of Section 1255, a visa number must be available when the applicant files the AOS application and when USCIS adjudicates that application. *See* 8 U.S.C. §§ 1255(a) & (b); 8 C.F.R. §§ 245.1(g) & 245.2(a)(2)(i)(A)-(C), Parker Decl., ¶¶ 36-37. USCIS may not approve an AOS application until DOS allocates a visa number, and for such allocation to occur, a visa number must be available for that particular preference category or country. Parker Decl., ¶¶ 36-37*;* 8 U.S.C. § 1255(b); 8 C.F.R. § 245.2(a)(5)(ii) ("[a]n application for adjustment of status … shall not be approved until an immigrant visa number has been allocated by the Department of State[.]"

**C. Retrogression may Occur when Visa Demand Exceeds Supply.**

Visa availability varies based on demand, and when demand for immigrant visas exceeds the supply in a particular preference category or country, that category or country is considered "oversubscribed," and DOS must impose a cut-off date to maintain visa allocation within the statutory limits for the given fiscal year. Parker Decl., ¶¶ 12-19; *Zixiang Li v. Kerry,* 710 F.3d 995, 997–98 (9th Cir. 2013)*.* In such situation, DOS establishes a visa availability cut-off date ("Final Action Date"), which is the priority date of the earliest applicant who could not be accommodated for a visa number. Parker Decl., ¶¶ 12-13. DOS publishes these cut-off dates in the Final Action Dates chart in the monthly Visa Bulletin. *Id.*, ¶ 12. Final Action Dates are based on projections that are subject to change in subsequent months. *Id.*, ¶¶ 14, 16. Only persons with a priority date earlier than the cut-off date for their country and/or category have a visa potentially available. *Id.*, ¶ 12. Such applicants may be approved for AOS or issued an immigrant visa, if otherwise eligible. *Id.;* 8 C.F.R. § 245.1(g)(2), § 245.2(a)(5)(ii). Demand for visa numbers by applicants with a variety of priority dates can fluctuate from one month to another, with an inevitable impact on Final Action Dates.[10] Parker Decl., ¶¶ 15-16. Increased visa availability in any given month causes the dates on the Visa Bulletin to move forward, and decreased visa availability for a given month causes the dates to regress, which can preclude some applicants from filing their AOS applications or causes persons with previously pending AOS applications to become backlogged. *Id.*, ¶¶ 12-14.

Visa retrogression occurs when more people apply for adjustment or an immigrant visa in a particular category or country than there are visas numbers available for that month. *Id.,* ¶ 13. Retrogression prevents USCIS or DOS from taking final action on an AOS application or an

---

[10] Visa Retrogression, https://www.uscis.gov/greencard/ green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression (last visited Nov. 15, 2022).

immigrant visa application whose priority date is no longer current under the Final Action Date because doing so would violate one or more of the statutory provisions on which the dates are based. *Id.*, ¶¶ 13, 16 ("[r]estricting immigration to the United States by making visas unavailable to some or all those who have applied for such visas is implicit in the statutory scheme devised by Congress to regulation immigration …"). If an applicant's priority date for a pending AOS application no longer meets the cut-off date published in the Visa Bulletin, due to retrogression, his or her application will remain pending, unless otherwise denied (e.g., based on a finding that the applicant is inadmissible), until a visa once again becomes available. *See* USCIS Policy Manual, Volume 7, Part A, Chapter 6, Section C.  https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6

On September 6 and 7, 2022, DOS issued memoranda to USCIS that said, effective immediately, DOS would not allocate any visa numbers in response to requests for EB-1, EB-2, or EB-3 requests for the remainder of Fiscal Year 2022.  Parker Decl., ¶ 25.  Per DOS, this was the result of the maximum level of visas which may be made available for use on a worldwide basis for EB-1, EB-2, and EB-3 applicants during FY 2022 having been reached.  *Id.*  The Final Action Date for EB-2 immigrant visas chargeable to India retrogressed in the October 2022 Visa Bulletin.  Parker Decl., ¶¶ 17-18.  This date retrogressed to April 1, 2012, as provided in the October (and November) 2022 Visa Bulletins.[11]  In the October Visa Bulletin, DOS explained its reason for the retrogression:

> Rapid forward movements of the India E2 final action and application filing dates during FY-2022 were made to maximize number use under the unprecedented high employment limit of 281,507.  As a result, heavy applicant demand has materialized and coupled with significantly lower visa number availability for India E2 for FY-2023 as compared to FY-2022,

---

[11] DOS Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-november-2022.html (last visited Nov. 15, 2022).

corrective action was required to keep number use within the maximum
allowed under the FY-2023 annual limits.

The agencies project the annual limit for EB-2 visas for Indian nationals in FY 2023 to be 3,944.

Parker Decl., ¶ 17.  USCIS believes there to be over 41,000 Indian nationals seeking AOS as of

September 20, 2022.  *Id.*  With the volume of pending AOS applicants far exceeding the pool of

EB-2 visas available in FY 2023, "DOS set a Final Action Date that would allow the visas to

generally be issued to Indian EB2 applicants with the earliest priority dates …".  *Id.*, ¶ 18.

Importantly, retrogression does not change the priority date of Plaintiffs' place in the "visa

backlog, queue, or line."  Parker Decl., ¶ 19. "The noncitizen may still receive a visa when one

becomes available to them based on their fixed priority date."  *Id.*  Additionally, Plaintiffs can

continue to receive substantial immigration benefits while they wait for an immigrant visa

number and remain in the United States lawfully.[12]  Parker Decl., ¶ 27.

## IV.    PROCEDURAL BACKGROUND

On July 13, 2022, the Patel Plaintiffs filed their original Complaint in which they chiefly

sought this Court to compel USCIS to adjudicate their AOS applications before September 30,

2022.  Patel Dkt. No. 1. The Gupta Plaintiffs similarly alleged that USCIS had unreasonably

delayed adjudicating their AOS applications and sought the same relief via their original

---

[12] Once an applicant files his or her AOS application, the following generally applies while the
application remains pending:  (1) the applicant can remain present in the United States "in a period of
authorized stay," *see* 8 U.S.C. § 1255(c)(2); 8 C.F.R. § 245.2(a)(5); (2) the applicant is eligible to apply
for employment authorization that would permit their employment with any U.S. employer, 8 C.F.R.§
274a.12(c)(9); (3) the applicant, though the American Competitiveness in the 21st Century Act ("AC21"),
after the application has been pending 180 days, is eligible to "port" the offer of employment on which
their application is based to a new job offer in the same or similar occupational classification without
losing their previous labor certification or I-140 petition, 8 U.S.C. §§ 1154(j), 1182(a)(5)(A)(iv); and (4)
the applicant is eligible to apply for travel authorization to depart and re-enter the county during the
validity of their advance parole document without abandoning their AOS application, 8 C.F.R. §
245.2(a)(4)(ii).  Additionally, applicants are eligible to seek regular renewals of their employment and
travel authorization documents without paying a filing fee.  8 C.F.R. §§ 103.7(b)(1)(i)(M)(4) &
103.7(b)(1)(i)(II).

Complaint filed on August 25, 2022.  Gupta Dkt. No. 1, ¶¶ 158-161. The Plaintiffs then each

filed Motions for Preliminary Injunctions, seeking to expedite the Court's issuance of the relief

sought in the underlying Complaints.  Patel Dkt. No. 15 & Gupta Dkt. No. 2.  This Court

consolidated the cases for purposes of a Preliminary Injunction hearing and later for pretrial

proceedings.  Gupta Dkt. No. 7, 11.  The Defendants opposed the Preliminary Injunction motions

and argued that the relief requested was no longer available as USCIS and DOS had fully issued

and allocated all the available FY 22 visas.  Patel Dkt. No. 30.  On September 28, 2022, the

Court denied the Plaintiffs' Motions for Preliminary Injunctions.  Patel Dkt. No. 52 & Gupta

Dkt. No. 17.  The Plaintiffs then filed amended Complaints.  Patel Dkt. No. 46 & Gupta Dkt. No.

13.  Plaintiffs then filed their partial motion for summary judgment.  Patel Dkt. No. 55 & Gupta

Dkt. No. 19.

## V.  <u>STANDARD OF REVIEW</u>

A district court should dismiss claims under Fed. R. Civ. P. 12(b)(1) when it lacks subject

matter jurisdiction to decide them.  Federal courts "are courts of limited jurisdiction, so federal

jurisdiction is never presumed." *Morales Posada v. Cultural Care, Inc.,* 554 F. Supp. 3d 309, 317-

18 (D. Mass. 2021).  The burden of demonstrating the existence of federal jurisdiction rests with

the party asserting jurisdiction. *Id.* at 318.  "To survive a motion to dismiss [under Rule 12(b)(6)],

a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  The "'tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *See*

*Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (quoting *Ashcroft, 556*

U.S. at 678).  A Rule 12(b)(6) motion to dismiss is an appropriate vehicle in the APA context "where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)."  *Atieh v. Riordan*, 727 F.3d 73, 76 n.4 (1st Cir. 2013).

Under Fed. R. Civ. P. 56, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The filing of cross-motions for summary judgment does not alter these general standards; rather the court reviews each party's motion independently, viewing the facts and drawing inferences as required by the applicable standard, and determines, for each side, the appropriate ruling. *See Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996).

**VI**. **ARGUMENT**

**A. The Court Lacks Jurisdiction Over Plaintiffs' Complaint.**

This Court lacks subject matter jurisdiction over Plaintiffs' claims regarding how USCIS and DOS adjudicate AOS applications.  Additionally, portions of Plaintiffs' Complaints are moot and therefore subject to dismissal.

**1. The Administrative Procedures Act does not provide Jurisdiction over Plaintiffs' Claims.**

In the instant matter, Plaintiffs assert that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and that under its federal question jurisdiction, the Court can hear claims under the APA.  Patel Dkt. No. 46, ¶¶ 5-6 & Gupta Dkt. No. 13, ¶¶ 5-6.  The APA, however, does not provide this Court with jurisdiction to consider the Plaintiffs' core challenge to how Defendants adjudicate AOS applications and allocate immigrant visas.

Judicial review under the APA is unavailable if another statute "preclude[s] judicial review" or "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a); *see*

*also Bernardo ex rel. M & K Engr., Inc. v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016), cert. denied, 136 S. Ct. 2487 (2016) (APA jurisdiction to review discretionary immigration action barred by terms of 5 U.S.C. § 701(a)).  As recently noted by another district court considering the same arguments raised by Plaintiffs, "8 U.S.C. § 1252 … appears to strip courts of authority for judicial review of various kinds of actions involving [noncitizens], including actions under 8 U.S.C. § 1255."  *Museboyina*, 2022 WL 4608264, *7.  Congress, through Section 1252,  has barred judicial review of challenges to the agencies' judgments, decisions, and actions related to adjustment applications, and therefore the Plaintiffs' first two causes of action must be dismissed and Plaintiffs' partial motion for summary judgment denied.

8 U.S.C. § 1252(a)(2)(B) directs that "[n]otwithstanding any other provision of law (statutory or nonstatutory), … and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review any judgment regarding the granting of relief under section … 1255 of this title."  8 U.S.C. § 1252(a)(2)(B)(i).  Section 1255 applies to AOS applications.  The Supreme Court recently provided an expansive interpretation of Section 1252(a)(2)(B)(i)'s jurisdiction stripping provision and broadly defined the provision's key term "judgment."  In *Patel v. Garland,* -- U.S. --, 142 S. Ct. 1614 (2022), the Court held that 8 U.S.C. § 1252(a)(2)(B)(i) deprives federal courts of subject matter jurisdiction over all judgments related to the granting or denying of AOS applications.  *Id.* at 1622.  Specifically, the Court explained that Section 1252(a)(2)(B)(i) "does not restrict itself to certain kinds of decisions.  Rather, it prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and other enumerated provisions."  *Id.* (emphasis in original).

The Supreme Court rejected the argument that the provision's use of "judgment" referred exclusively to a "discretionary" decision.  *Id.* at 1623-24 (explaining that "[h]ad Congress intended

to limit the jurisdictional bar to 'discretionary judgments,' it could easily have used that language—as it did elsewhere in the immigration code."  The Court also rejected the argument that Section 1252(a)(2)(B)(i) only applies to the actual decision of whether to deny or grant relief. *Id.* at 1265-26.  The Court also rejected the argument that determinations as to the eligibility for the application for relief remained subject to judicial review, finding that such an interpretation would read "regarding" out of the statute entirely.  *Id.* at 1625-26.

Plaintiffs, of course, are not now subject to removal proceedings, as the noncitizen in *Patel* was.  And while the *Patel* court noted that the "reviewability of [USCIS] decisions is not before us, and we do not decide it," it nonetheless observed that "it is possible that Congress did, in fact, intend to close th[e] door" to judicial review of USCIS' adjustment decisions.  *Id.* at 1626.  The Court reasoned that "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief."  *Id.* at 1626-27.  Another session of this Court recently applied *Patel* to conclude that Section 1252(a)(2)(B)(i) stripped it of subject matter jurisdiction to consider a challenge to USCIS' denial of an adjustment application even though the denial did not occur in the context of removal proceedings.  *See Rabinovych v. Mayorkas,* No. 21-CV-11785-AK, 2022 WL 3908951, at *3 (D. Mass. Aug. 31, 2022).  Multiple district courts have also concluded as much, applying *Patel*.  *See Badra, v. Jaddou*, No. 22-22465-CIV, 2022 WL 4376331, at *1–2 (S.D. Fla. Sept. 22, 2022); *Doe, v. Mayorkas*, No. 22CV00752ECTDTS, 2022 WL 4450272, at *3 (D. Minn. Sept. 23, 2022); *Garcia v. USCIS*, No. 21-cv-2233, 2022 WL 3349151, at *9 (N.D. Tex. Aug. 12, 2022).

By Section 1252(a)(2)(B)'s plain language and pursuant to *Patel's* reasoning, this Court lacks subject matter jurisdiction over Plaintiffs' Complaint which plainly seeks district court

review of USCIS' judgments regarding whether their AOS applications can be adjudicated and approved at this time. Plaintiffs complain as to USCIS' decision not to immediately adjudicate their AOS applications and to instead allow their applications to remain pending because of visa retrogression.  They in essence assert that Defendants' judgments regarding visa availability create additional eligibility criteria for an immigrant visa.  This effectively equates USCIS' judgment regarding when to use available visa numbers to the denial of Plaintiffs' AOS applications.  However, USCIS has made a judgment not to adjudicate Plaintiffs' AOS applications at this time because visa numbers are not currently available to Plaintiffs based on their priority dates, country of chargeability and preference category.  Absent such number's availability, Plaintiffs are not "eligible to receive an immigrant visa" as required by 8 U.S.C. § 1255(a).  As such, USCIS' decision to hold Plaintiffs' applications in abeyance, rather than adjudicate without an available visa number, is a judgment "regarding the granting of relief" which Section 1252(a)(2)(B)(i) bars this Court from reviewing and considering.

Additionally, another statutory provision, 8 U.S.C. § 1252(a)(2)(B)(ii), strips this Court of jurisdiction to consider "any other decision or action by the … Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the … Secretary of Homeland Security …".  Section 1255(a) provides that USCIS, at its discretion and in comport with regulations it may prescribe, can approve an AOS application.  Steps such as determining whether a visa number is available, such that the application may be approved, or holding the application in abeyance if no such number is available, are plainly "decision[s] or action[s]" within USCIS' discretionary authority under Section 1255(a).  In *Touarsi v. Mueller*, 538 F. Supp. 2d 447, 452 (D. Mass. 2008), another session of this Court concluded that USCIS' "authority to manage the adjustment of status application process, committed to [the agency's]

discretion by § 1255(a), falls within the scope of § 1252(a)(2)(B)(ii). . ." and therefore judicial review was unavailable. *Id.* The court concluded that Congress provided USCIS with discretion, not subject to judicial review, to adjudicate AOS applications, which includes "the discretion to determine matters concerning the processing of applications, including the discretion to determine when [USCIS] has determined that [it] has sufficient, current, reliable information upon which to base [its] ultimate decision." *Id.* at 452.

Defendants recognize that courts have concluded that Section 1252(a)(2)(B)(ii) does not strip courts of jurisdiction to consider a challenge to the pace of AOS adjudication and do not argue otherwise here. *See Tang v. Chertoff*, 493 F. Supp. 2d 148, 152-54 (D. Mass. 2007). However, in the instant litigation, Plaintiffs do more than simply challenge the pace of USCIS' adjudication of their AOS applications. They instead argue that USCIS' decisions regarding their eligibility for adjustment and the way adjustment applications are adjudicated are unlawful and subject to judicial review. But, Section 1252(a)(2)(B)(ii) bars this challenge as USCIS has the discretion to hold Plaintiffs' applications in abeyance because visa numbers are not currently available to Plaintiffs based on their priority dates, country of chargeability and preference category. Additionally, USCIS, as directed in Section 1255(a), has issued regulations that concern the adjudication of AOS applications. One such regulation mandates that an AOS application "shall not be approved until an immigrant visa has been allocated by the Department of State." 8 C.F.R. § 245.2(a)(5)(ii). USCIS' decision, therefore, in this case, to hold the Plaintiffs' AOS applications in abeyance until their priority dates become current so as to allow the State Department to allocate immigrant visas is plainly a decision and action shielded from judicial review by 8 U.S.C. § 1252(a)(2)(B)(ii). Consequently, Plaintiffs' claims against the agencies' so-called "Regression Policy" or "adjudicatory hold policies" must be dismissed.

**2. The Court Lacks Subject Matter Jurisdiction because Portions of Plaintiffs' Claims are Moot and Plaintiffs Lack Standing.**

This Court also lacks subject matter jurisdiction over aspects of Plaintiffs' amended Complaints on account of mootness and lack of standing due to the events that occurred after the original Complaints were filed. Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "When a case is moot—that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome—a case or controversy ceases to exist, and dismissal of the action is compulsory." *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001). A claim is no longer "live" when a court cannot provide effectual relief. *Oakville Dev. Corp. v. FDIC*, 986 F.2d 611, 613 (1st Cir. 1993).

Plaintiffs ask this Court to enter an order reserving FY 2022 EB2 visas. *See* Patel Dkt. No. 46, ¶¶ 225, 227 & Gupta Dkt. No. 13, ¶ 227, 229. However, Plaintiffs fail to demonstrate a cause or controversy currently exists as USCIS and DOS have allocated EB-2 and EB-3 visa numbers at the annual limits established by Congress in FY 2022. *See* Exh. A, Parker Decl., ¶ 25. The Court cannot go back in time to a period where visas were available and grant Plaintiffs' request. *Zixiang Li*, 710 F.3d at 1002 ("courts are not time machines"). As explained by the Ninth Circuit, "the employment-based visa numbers available in a particular fiscal year expire …, rendering moot any claim for a visa number from a prior year." *Zixiang Li*, 710 F.3d at 1002; s*ee also Yu v. Chertoff*, No. 07CV0296-LAB RBB, 2008 WL 413269, at *4 (S.D. Cal. Feb. 12, 2008) (explaining that "Congressional action limiting the availability of the type of visa Yu seeks forecloses the adjudicatory relief he seeks, from any source at this time."); *Bansal v. Chertoff*, No. C06-1716RSL, 2007 WL 9775556, at *4 (W.D. Wash. Oct. 29, 2007) (noting that "there are currently no visas available for plaintiff. Nor can the agency grant him a visa when no visas are available.").

And, even if visas were still available, courts have cast doubt on whether USCIS can be ordered to reserve a visa for future use as Plaintiffs request.  *See Cheema v. U.S. Citizenship & Immigr. Servs.*, No. 4:21-CV-3209, 2021 WL 4553039, at *9 (D. Neb. Oct. 5, 2021) (explaining that the "[r]eserving an unused visa for an applicant past the end of the fiscal year would, in fact, be unlawful."); *Wali v. U.S. Citizenship & Immigr. Servs.*, No. 4:21-CV-3288, 2021 WL 5041207, at *3 (D. Neb. Oct. 29, 2021) ("The Court questions whether it can require USCIS to 'reserve' or 'hold' a visa number beyond the date it would otherwise be available or if USCIS even has the ability to do so if it were so ordered.").  As such, these aspects of Plaintiffs' Complaints are moot and must be dismissed.

Additionally, district courts routinely dismiss complaints asserting claims of unreasonable delay in adjudicating an immigration application as moot upon evidence that USCIS has acted on the purportedly delayed application by issuing a Request for Evidence ("RFE") or similar notice that requires a response from the plaintiff before the agency can act further.  As such, the Patel Plaintiffs' claim as to unreasonable delay became moot when USCIS reviewed their AOS applications and issued a RFE for the submission of the required medical examination form.  *See* Patel Dkt. No. 30 at Exh. C.  *See Phath v. Blinken*, 1:22-cv-11019-JGD, ECF No. 17 (D. Mass. Nov. 15, 2022) (unreasonably delay claim moot upon issuance of  Notice of Intent to Revoke); *Jean v. Garland*, -- F. Supp. 3d --, 2022 WL 11218046 (D. Mass. Oct. 19, 2022) (unreasonably delay claim moot because the "allegedly delayed immigration applications have either been adjudicated or are awaiting further documentation from plaintiffs."); *Chhoum et al v. Blinken et al*, 1:22-cv-10499-DJC, ECF No. 24, (D. Mass. Oct. 20, 2022) (motion to dismiss granted as

agencies took adjudicatory action on purportedly delayed petitions); *Patel et al. v. Blinken et al.,* No. 22-CV-10464-RGS, ECF No. 10 (D. Mass. May 9, 2022) (same).[13]

While Plaintiffs may prefer this Court allow the Complaint to remain pending until a final decision is issued on their AOS applications, courts have noted that "a decision on the application itself is not necessary to deprive the Court of jurisdiction on mootness grounds." *Yusupov v. Mayorkas*, No. 21-CV-4066(EK), 2021 WL 6105720, at *1–2 (E.D.N.Y. Dec. 23, 2021). At this juncture, with USCIS reviewing their applications and issuing the RFEs there is "no role for the Court" any longer until a period of future delay accrues. *Meixian Ye v. Kelly*, No. 17 CIV. 3010 (BMC), 2017 WL 2804932, at *1 (E.D.N.Y. June 28, 2017).

Additionally, Plaintiffs lack constitutional standing to press their claims of injury as result of USCIS not adjudicating their AOS applications before September 30, 2022. A threshold aspect of a court's jurisdiction "is the doctrine of standing…the core component of [which] is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). The *Lujan* Court explained "that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized…and (b) actual or imminent, not conjectural or hypothetical, ….[s]econd, there

---

[13] Courts around the country regularly hold similarly. *See Markandu v. Thompson*, No. CV 07-4538 (JLL), 2008 WL 11510675, at *3 (D.N.J. June 11, 2008) (collecting cases for the proposition that mandamus actions to compel agency action in the immigration context become moot "once the agency begins to spin its bureaucratic cogs toward decision"). *See also Sajib v. Renaud*, No. 21-CV-07039 (BMC), 2022 WL 1062319, at *1 (E.D.N.Y. Apr. 8, 2022) (explaining that "[b]ecause defendant has issued an RFE, plaintiff's claims are moot. Defendants have taken the next step in this process so there is no reason for this Court to compel them to do so."); *Xiaobin Xu v. Nielsen*, No. 18-CV-2048 (BMC), 2018 WL 2451202, at *1 (E.D.N.Y. May 31, 2018) (noting that "[i]n sending the Request for Evidence, USCIS has acted on plaintiff's I-485 application and this action is moot."); *Jun Lin v. Johnson*, No. 19CV2878BMCLB, 2019 WL 3409486, at *1 (E.D.N.Y. July 29, 2019) (same).

must be a causal connection between the injury and the conduct complained of…[, and t]hird, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 560-61 (quotation marks and citations omitted).

Here, Plaintiffs have not shown a concrete or particularized injury—that their AOS applications would have been adjudicated if the EB visa numbers were not exhausted before the end of FY 2022—absent judicial intervention.  Plaintiffs were never guaranteed their AOS applications would be adjudicated by September 30, 2022, let alone that their applications would have been approved.  Thus, they have not shown and cannot show that the application of visa retrogression caused a concrete injury. As to the second element of establishing standing, Defendants cannot be responsible for any alleged injury where the agencies are simply following statutory requirements.  DOS must comply with both the annual worldwide (8 U.S.C. § 1151) and per-country (8 U.S.C. § 1152) limits on the number of EB preference visas allocated each FY.  "[N]either the supposed 'retrogression policies' nor any other action of the agencies is responsible for the requirement that a visa must be available at the time an application is approved as well as at the time the application is made." *Museboyina* 2022 WL 4608264, at *5.  The thrust of Plaintiffs' amended Complaints and consolidated motion for partial summary judgment is an attack on the limits imposed by Congress, not any DOS or USCIS policy.

Finally, Plaintiffs fail to establish redressability because there are no additional visa numbers remaining from FY 2022.  The Court cannot order that a visa number be created for Plaintiffs from the original pool of FY 2022 visas as such pool is depleted.  Plaintiffs also request this Court order USCIS to decide their AOS applications within 30 days.  Patel Dkt. No. 46, ¶ 226 & Gupta Dkt. No. 13, ¶ 228.  Again, however, Plaintiffs cannot establish that a judicial order that USCIS adjudicate their AOS applications would ameliorate their purported injury as they lack a

current priority date necessary to allow approval of their AOS applications.

**B. Plaintiffs Fail to State an APA Claim of Unlawful Withholding of Agency Action and Fail to Demonstrate Entitlement to Summary Judgment on these Counts.**

Plaintiffs' first two causes of action asserting that the Defendants are unlawfully withholding the adjudication of their AOS applications are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) as their claims, characterized recently as "absurd" by two district courts, are without merit and would, if adopted, cause the Defendants to violate multiple statutory provisions. Plaintiffs also seek judgment as a matter of law as to these two causes of action, but as explained below, this Court must deny their partial motion for summary judgment as it is not supported by statute, regulation, or caselaw.

Plaintiffs contend that USCIS unlawfully requires a visa number to be immediately available when an applicant files an AOS application and when USCIS adjudicates such application. Patel Dkt. No. 46, ¶¶ 121-129 & Gupta Dkt. No. 13, ¶¶ 123-131. Plaintiffs further assert that DOS unlawfully refuses to allocate a visa number to an AOS applicant if such applicant has a priority date after the "current" date in the Visa Bulletin. Patel Dkt. No. 46, ¶¶ 130-137 & Gupta Dkt. No. 13, ¶¶ 132-139. In their consolidated motion for summary judgment, they label the Defendants' purportedly unlawful statutory implementations as the "adjudicatory hold policies" and ask this court to enjoin the agencies' long-standing approach to the allocation of immigrant visas. Patel Dkt. No. 55 & Gupta Dkt. No. 19.

Plaintiffs, however, fail to state a viable claim under the APA that Defendants have unlawfully withheld agency action regarding the adjudication of their AOS applications. Section § 706(1) of the APA provides that a court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A Court can compel agency action under this section only if "a plaintiff asserts that an agency failed to take a *discrete* agency action that it

21

is *required to take.*"  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  Such discrete agency action must be "demanded by law".  *Id.* at 65.  The APA does not support a "broad programmatic attack" to an agency's policy or program.  *Id.*  at 64.

Plaintiffs fail to state a claim because Section 1255(a) does not contain a "discrete-action" command that USCIS adjudicate and approve AOS applications that lack available immigrant visa numbers for DOS to allocate.  Plaintiffs are of course correct that § 1255(a) is silent as to whether an immigrant visa must be immediately available at the time of adjudication.  But, Section 1255(a) does require that a noncitizen be "eligible to receive an immigrant visa" to adjust status and Section 1255(b) mandates that DOS "reduce by one" the number of available visas "[u]pon the approval of an application for adjustment" made under Section 1255(a).  8 U.S.C. §§ 1255(a) & (b).  As such, the pertinent statutory provisions, when read in tandem as required, unambiguously require an immigrant visa to be available at both the filing of the AOS application and the approval of such application.  USCIS is not required to adjudicate and approve, and DOS is not required to allocate an immigrant visa number, to an individual who does not have a current priority date based on their country of chargeability and preference category when the application is adjudicated.

As recently explained by a district court considering the same challenge, "[i]t is not clear to the [c]ourt that [plaintiff] is challenging a 'discrete agency action' or, in light of the [c]ourt's interpretation of § 1255, that there is any action [plaintiff] is challenging that the agencies are 'required to take.'"  *Museboyina*, 2022 WL 4608264, *7.  The court noted that Section 1255(a) "says nothing about whether a visa must be available at the time an application is approved" and "plainly and unambiguously, § 1255(b) requires that a visa be available at the time of approval of an application …" because that provision requires DOS to reduce by one the number of visas authorized to be issued and DOS "obviously could not make such a reduction … if they are not

available." *Id.* The court therefore explained that neither the agencies purported "Retrogression Policies," "nor any other action of the agencies is responsible for the requirement that a visa number must be available at the time an application is approved as well as at the time the application is made. Consequently, the agencies have not 'unlawfully withheld' a decision when no visas are available at the time of approval." *Id.* at *5.

The *Museboyina* court also deemed the argument that visa retrogression was unlawful to be "absurd." *Id.* It found the plaintiff's interpretation of how visa numbers should be allocated to "conflict[] with limitations on visa number usage requirements by compelling the agencies to grant a visa to every applicant who had a visa number available at the time of application, even if the allocated visas have run out before approval." *Id.* Such approach "would also result in loss of visas that could be issued to qualified applicants if a visa had to be allocated to an application when filed, because applications that did not result in approval after the end of the fiscal year could not be reallocated to another application." *Id.* Two visas would need to be allocated "where the adjudication of an application spans more than one fiscal year … resulting in the loss of one otherwise available visa." *Id.* In sum, the court explained that visa retrogression, far from being illegal, "serves the statutory goals of controlling the number of visas issued annually." *Id.*

Similarly, in *Babaria*, 2022 WL 10719061 at *5, the district court found no ambiguity in the statutory scheme utilized by Defendants to allocate immigrant visas. Instead, the court found that the plaintiffs' argument "is inconsistent with the requirements of the INA." *Id.* Indeed, the court explained that plaintiffs' "interpretation of 8 U.S.C. § 1255(a) would require DOS to issue visas in excess of the number authorized by Congress if it underestimated the number of people who would apply for those visas." *Id.* Further, the court reasoned that plaintiffs' "interpretation would lead to a mismatch between the number of visas available and the number issued, because

23

a visa's availability would be committed at the time of application but reduced only at the time of approval. *This is an absurd result*." *Id.* (emphasis added).

Similar attempts to compel agency action purportedly unlawfully withheld have failed due to plaintiffs' inability to demonstrate USCIS ignored a specific legislative command. For example, in *Zixiang Li v. Kerry*, a group of plaintiffs, upset at the way visas were allocated by USCIS and DOS, sought court ordered changes to USCIS' responsibilities in the visa number allocation system. 710 F.3d at 999-1001. The Ninth Circuit found plaintiffs failed to state a plausible claim against USCIS, noting USCIS's responsibilities regarding adjudicating AOS applications "are carefully circumscribed and tied to the actions of other agencies." *Id.* at 1001 (explaining that USCIS cannot "approve adjustment of status until an immigrant visa number has been allocated by DOS"). The Ninth Circuit also rejected plaintiffs' claims for prospective relief, holding that in the absence of any statutory authority requiring the specific changes, courts lack the authority to "compel agency action merely because the agency is not doing something we may think it should do." *Id.* at 1004. This Court should also deny Plaintiff's attempts to restructure USCIS' and DOS' long-standing framework of visa allocation as Plaintiffs cannot demonstrate that the agencies are withholding or delaying any action that they are statutorily required to take.

The heart of Plaintiffs' argument – the purported illegality of what they call "Retrogression Policies" or "adjudicatory hold policies"– is simply flawed. Plaintiffs' proposed interpretation would allocate a visa to an AOS applicant at the time of filing and would conflict with other statutory provisions by allowing the agencies to exceed the worldwide levels (as well as category and country limitations) of immigration by removing limits on AOS applications. The numbers of immigrant visas issued and AOS applications granted each fiscal year are limited in terms of numbers of employment-based visas (the EB category) and per country. *See* 8 U.S.C. §§ 1151–

1153.  The quantity of visa numbers that may be used in each of the first three quarters of a year is limited to 27 percent of the worldwide level of EB visas per quarter. 8 U.S.C. § 1151(a)(2). Plaintiffs' interpretation, as applied to pending applications, including those filed by Plaintiffs, would violate the statutory limitation of 27 percent per quarter.  If USCIS could grant adjustments on the currently pending cases based on visa number availability when filed rather than at the time of adjudication, it would be contrary to the numerical limitations Congress imposed per year, per country, and per quarter.

Plaintiffs' argument is chiefly based on the 1976 amendments to 8 U.S.C. § 1255(a), which amended that subsection to remove text stating that "a quota or nonquota immigrant visa was immediately available to him at the time his application is approved."  Patel Dkt. No. 46, ¶¶ 20-22 & Gupta Dkt. No. ¶¶ 20-22.  Plaintiffs also rely heavily on one sentence in a House Report where the revision "designates the date[] used in determining the availability of a visa number as the date the [adjustment of status] application is filed, rather than the approval date." *Id.* (*citing* H.R. 94-1553, Immigration and Nationality Act Amendments of 1976, p. 27 (1976)).  Plaintiffs' reliance on this section of the report is misplaced as the full section of the Section 6 cited is discussing the transition from an "Eastern" and "Western Hemisphere" immigration system, assessing changes that will result in allowing "natives of the Western Hemisphere" seeking to adjust status in the United States to have their "priority date" – the "date used in determining the availability of a visa" – deemed to be the date their application was filed.[14]

Within short order of amendment of Section 1255(a) in 1976, the agencies charged with carrying out the statutory provisions and courts that interpreted these provisions expressed

---

[14] *See, e.g., Angeles v. Johnson*, 121 F. Supp. 3d 997, 1003 (S.D. Cal. 2015) (noncitizens from Western Hemisphere countries "were not categorized by a priority or preference system, and were admitted on a first-come first-served basis without a per-country quota") (*citing* to H.R. 94-1553)

disagreement with the argument that adjustment could proceed solely if an immigrant visa was available at the time the application was filed. In 1979, a Department of Justice Legal Opinion explained that it did not appear Congress intended "to cause a significant change in the adjustment processing procedures used by the INS" with the amendment cited above. Patel Dkt. No. 46, Exh. A; Legal Op. No. 79-19 at 90-91. Instead, DOJ explained that due to Section 1255(a)(2)'s requirement that an adjustment applicant be eligible to receive an immigrant visa, INS "continued to take the position that an immigrant visa number must <u>actually</u> be allocated to the applicant before his application can be granted." *Id.* at 90 (emphasis in original). DOJ noted that "INS has no statutory authorization to adjust the status of an alien if the State Department cannot actually allocate a visa number to that alien." *Id.* at 91. DOJ explained that if visa numbers were allocated at the time an application was filed, rather than when the application was adjudicated, "[t]his would result in numbers allocated to those who are eventually denied adjustment, either on grounds of eligibility or discretion, being lost forever." *Id.*

Three years later, in 1982, a district court rejected similar arguments raised by the Plaintiffs in a case where (like here) the plaintiffs' immigrant visa was current when their AOS application was filed but then regressed. *Shamsian, et al., v. Ilchert*, 534 F. Supp. 178, 181 (N.D. Cal. 1982). In *Shamsian*, the court noted that after the visa regression occurred, the lead plaintiff's "application was held in abeyance until a visa number could be allocated to him. The INS procedure was *properly administrated* under its own regulations and operating instructions." *Id.* at 183 (emphasis added). The court explained that "[a]n applicant is merely eligible [for adjustment of status] if a visa is immediately available to him at the time of his application and he is otherwise qualified." *Id.* The court continued that "[t]o require that he be assigned a visa when one was temporarily available to him at the time of his application would … violate the spirit of the statutory scheme

Congress enacted." *Id.* The court also discussed the Congressional amendment cited by Plaintiffs, noting that the "amendment appears to allow the INS to accept the application at an earlier date in some cases to avoid hardship, but, contrary to [plaintiff's] assertion, does not give him the right to become a permanent resident at that time." *Id.* at 186, n.5.

Plaintiffs cite to *Hernandez v. Ashcroft*, 345 F.3d 824, 849 (9th Cir. 2003) in their partial motion for summary judgment to support their argument that Section 1255(a) only requires a visa to be available when the AOS application is filed. Patel Dkt. No. 55 at 4 & Gupta Dkt. No. 19 at 4. However, *Hernandez* instead provides further support to the long-standing approach to visa allocation maintained by USCIS and DOS. In *Hernandez*, the Ninth Circuit noted that Section 1255 requires that an immigrant visa be immediately available at the time of filing and that "[t]he text of the statute requires nothing else." *Id.* at 843. Defendants do not dispute this requirement as it relates to eligibility to pursue AOS. But, 8 C.F.R. § 245.2(a)(5)(ii), which mandates that an AOS application cannot be approved "until an immigrant visa number has been allocated by the Department of State," must also be consulted as this regulation, per the Ninth Circuit, "describes a *mechanical requirement* necessary to actually adjust status, one that does not defeat eligibility but which may affect processing of an approved petition." *Id.* at 844 n.21 (emphasis in the original). The Ninth Circuit explained "[a]lthough the visa need only be available at the time of filing, adjustment cannot actually be granted unless a number is also available at the time of adjustment. Should the numbers meanwhile fall behind and become unavailable for the applicant's priority date, adjustment is postponed … until the number does become available." *Id.* (citing GORDON ET AL., IMMIGRATION LAW & PROCEDURE, § 51.02(2)(b)(iii) (2003)) (emphasis in the original). Per the Ninth Circuit, Ms. Hernandez's visa number remained current (unlike the Plaintiffs in this litigation) and therefore her adjustment could proceed. *Id.*

Plaintiffs' argument overlooks the clear distinction Congress drew between visa availability and visa issuance, as evidenced when reading the statute as a whole. *Compare* 8 U.S.C. § 1151(a) (referring to "may be issued immigrant visas") *with* 8 U.S.C. § 1153(b) (referring to "Preference Allocation for Employment-Based Immigrants"). As clearly stated in 8 U.S.C. § 1255(a), the applicant must be "eligible *to receive* an immigrant visa." (emphasis added). An immigrant visa must be available at the time of adjudication, after USCIS has determined eligibility, that the applicant is admissible, and that the applicant merits a favorable exercise of discretion for the applicant to be eligible "to receive" an immigrant visa. If USCIS in its discretion determines to approve the application, then and only then, is the visa number "used" by the State Department as reflected by 8 U.S.C. § 1255(b).

Plaintiffs' proposed interpretation would further conflict with the Section 1255(b) because it would mean that DOS would have to reduce by one the number of available visas at the time of filing rather than at the time of approval. This also conflicts with 8 U.S.C. § 1151, which describes the annual limits to apply to "issued immigrant visas" (interpreted by USCIS and DOS to mean through consular processing) and otherwise acquiring "the status of an alien lawfully admitted to the United States for permanent residence" based on AOS with USCIS or the Department of Justice. To put it another way, the numerical limitations apply to the final action taken on an immigrant visa application by DOS or an AOS application by USCIS.

The application of Plaintiffs' interpretation to new AOS applications prospectively would result in more unused visas than the agencies' longstanding implementations of the statute. Under the Plaintiffs' interpretation, a visa would be allocated to an application when filed. However, ultimately each AOS application, including Plaintiffs, needs to be vetted and adjudicated prior to approval. Many applications do not result in the applicants becoming LPRs, as they may be denied

or withdrawn. If the denial or withdrawal occurred after the end of the fiscal year, the visa number, allocated at filing per Plaintiffs' interpretation, would be lost because it could not be reallocated to another EB application. Such an interpretation would significantly hamper DOS's ability to give meaningful visa availability projections in its monthly Visa Bulletins. *See* 8 U.S.C. § 1153(g).

Furthermore, Plaintiffs do not explain how their interpretation would work when an AOS adjudication spans more than one fiscal year. Section 1255(b) specifically requires DOS to charge the visa after USCIS approves the adjustment of status "for the fiscal year then current." Plaintiffs' interpretation would produce an absurd result of charging the visa to two separate fiscal years in those situations (once at the time of filing per Plaintiffs' interpretation and once upon approval as mandated by § 1255(b)). This would substantially reduce the number of immigrant visas available to all applicants and result in wasted visas.

Plaintiffs ask this Court to make a revolutionary change which would significantly alter who is eligible to adjust status under the comprehensive, complex, carefully constructed, visa allocation system established by Congress. This system provides specific rules for allocating immigrant visas such as providing for priority dates, requiring waiting lists, establishing per-country limits that apply to EB and FS in the aggregate, dividing the EB visas between five main categories and seven sub-categories, creating complex rules for calculating the annual limits, and detailing how unused visas will rollover between categories and fiscal years, among others. Plaintiffs fail to demonstrate a viable claim under the APA because they point to no discrete action that the agencies are statutorily required to take. As such, the first two causes of action from Plaintiffs' amended complaints must be dismissed for failure to state a claim and their consolidated motion for partial summary judgment on these same counts must be denied as well.

### C. Plaintiff Fails to State a Claim for Unreasonable Delay under the APA.

Plaintiffs' unreasonably delay claim set forth in the third cause of action of their amended Complaints must be dismissed as Plaintiffs have not demonstrated that the two-years their AOS applications have been pending constitutes an unreasonable period.[15]   Alternatively, this Court should grant Defendants' motion for summary judgment as to this count as well.  *See Seyhmus Aydemir v. Garland*, No. 22-CV-100 (PAC), 2022 WL 4085846, *3-4 (S.D.N.Y. Sept. 6, 2022) (collecting cases and explaining that "courts generally conclude that a green card delay of less than four years is reasonable on its face; by contrast, delays exceeding six years are often found unreasonable.")

The APA directs the agency to adjudicate the applications "within a reasonable time."  5 U.S.C. § 555(b).  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984).  This Court can utilize the *TRAC* factors to evaluate the delay claim.  *See V.U.C. v. United States Citizenship & Immigr. Servs.,* 557 F. Supp. 3d 218, 223 (D. Mass. 2021).[16]  Such factors are as follows:

(1)     the time agencies take to make decisions must be governed by a rule of reason;
(2)     where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

---

[15] The weight of authority holds that district courts can consider and apply the *TRAC* factors in unreasonable delay cases at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim.  Palakuru v. Renaud, 521 F. Supp. 3d 46, 49–50 (D.D.C. 2021), appeal dismissed, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021) (collecting cases).

[16] The First Circuit has not expressly adopted *TRAC* in evaluating unreasonably delay claims.  But in multiple decisions, it has favorably cited to the decision. *See Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016) (citing *TRAC* for the proposition that whether a timeframe for agency action is unreasonable depended on multiple factors); *Towns of Wellesley, Concord & Norwood, Mass. v. F.E.R.C.*, 829 F.2d 275, 277 (1st Cir. 1987) (referring to the *TRAC* decision as setting forth "guidelines" relevant to determining unreasonable delay and applying *TRAC* to the case).

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Id.* (internal citations and quotations omitted).  In considering these factors, courts have held that it is appropriate to "refuse[] to grant relief, even though all the other factors considered in *TRAC* favor[] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (citations and alterations omitted).

> 1. *TRAC* Factors 1 & 2 – The Rule of Reason weighs in favor of USCIS absent a Congressional deadline and lengthy delays.

The first and second *TRAC* factors are often considered together and focus on whether the length of time for the agency to act satisfies a rule of reason and any specific timeline established by Congress. *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 10 (D.D.C. 2021).  This factor examines whether there is "any rhyme or reason" for the Government's delay—in other words, "whether the agency's response time ... is governed by an identifiable rationale." *Palakuru v. Renaud*, 521 F. Supp. 3d 46 (D.D.C. 2021), *appeal dismissed,* No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021). As numerous other districts courts have recognized, these factors favor the government in cases such as Plaintiffs'.  For example, a district court recently declined to find that USCIS' twenty-month delay in adjudicating their AOS applications was unreasonable. *Singh v. Jaddou*, No. 2:22-CV-01180-RAJ, 2022 WL 4094373, at *3 (W.D. Wash. Sept. 2, 2022) (explaining that "delays of four years of [sic] less for the adjudication of status petitions have been found to be not unreasonable…."). The court concluded that the plaintiffs "have not shown …that USCIS's processing of applications is not governed by a rule of reason." *Id.  See also Aydemir*, 2022 WL

4085846 at *4 (finding that the first [TRAC] factor favored the government and "the law and alleged facts favor dismissal" of the complaint."); *Wali*, 2021 WL 5041207 at *3 (noting that plaintiffs failed to substantiate their argument that USCIS' approach to adjudication of AOS applications was unreasonable).

USCIS processes EB AOS applications in a reasonable manner to prioritize all visa-available, petition-approved applications.  Exh. A Parker Decl., ¶¶ 22-23; Declaration of Terri A. Robinson, Center Director at the National Benefits Center, Field Operations Directorate, USCIS, attached as Exh. B, ¶ 7. Since March 2022, the vast majority of EB AOS applications adjudicated by USCIS have been adjudicated by USCIS Field Offices.  Parker Decl., ¶ 22.  This was done "to expedite adjudications and maximize the potential for USCIS to use all available EB immigrant visas before the end of the 2022 fiscal year."  Robinson Decl., ¶ 7.

The time it takes for USCIS to adjudicate AOS applications is influenced by several external factors, including COVID-19 shutdowns and social distancing requirements, available visas, the volume of pending AOS applications, visa usage and allocation by DOS, and the Final Action Dates published by DOS. *Id.*, ¶¶ 4-5, 11, 19, 21-23, 25, 28.   Beyond the external factors, the AOS application itself may require additional processing time or different procedures depending on whether AOS is sought based on a previously filed Form I-140 or is sought concurrently with a newly filed Form I-140 and whether premium processing has been requested. *Id.*, ¶¶ 19-20.   In addition, the individual adjudication process for each EB AOS application necessarily has materially different factual circumstances.  The processing times for EB adjustment applications pending at USCIS Field Offices vary between offices due to each office's unique caseload, priorities, and resource allocation. *Id.*, ¶¶ 23-24.  RFEs may be issued to obtain missing or invalid medical examinations, which delays processing of the application and is dependent on

the applicant's response time.  *Id.*, ¶¶ 25-26.  Another major factual difference is whether an interview is required, which may require an additional transfer of the application to conduct the interview.  *Id.,* ¶ 27.  Though the processing of the various AOS applications based on the various EB categories is not as simple as first-in, first-out, USCIS' processing does generally track a reasonable process to adjudicate those with older priority dates first – subject to the various external and case specific factors described above.  *Id.*, ¶¶ 11, 19, 21, 22, 25, 28.

Courts have ruled that similar procedures for processing immigration benefits applications are reasonable and satisfy the first *TRAC* factor.  *See Ray v. Cuccinelli*, No. 20-CV-06279-JSC, 2020 WL 6462398, at *7–12 (N.D. Cal. Nov. 3, 2020) (finding that USCIS generally adjudicates immigration applications on a "first in, first out" basis, and that this process constitutes a "rule of reason" under the first *TRAC* factor); *Kolluri v. USCIS*, No. 3:20-CV-02897-N, 2021 WL 183316, at *4-7 (N.D. Tex. Jan. 17, 2021) ("[A]s noted by USCIS, applications may be expedited under various criteria, and the fraction of delays that are out of chronological order are insufficient to establish that the USCIS does not apply a first-in, first-out rule of reason."); *Kurakula v. Renaud*, No. 4:20CV3131, 2021 WL 308189, at *3–5 (D. Neb. Jan. 29, 2021) ("[S]light variations are inadequate to establish the USCIS does not follow a first-in, first-out process.").

Congress has not prescribed a specific deadline or timetable by which USCIS must process AOS applications.  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017).  Despite Plaintiffs' citations to USCIS's aspirational processing goals, neither these goals nor the sense of Congress, *see* 8 U.S.C. § 1571(b), impose a legal requirement upon the agency to decide immigration benefit applications within 180 days.  *See Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits have treated similar language as "precatory" and "a statement of opinion," rather than "a statement of fact").  The *Singh* court recently noted that

"this policy statement and others like it do not amount to a legal requirement to act on [p]laintiffs' applications within six months." *Singh*, 2022 WL 4094373, *4; *Wali*, 2021 WL 5041207 at *3 (same). This reading of 8 U.S.C. § 1571(b) makes sense because "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020) (citing *Skalka*, 246 F. Supp. 3d at 154 (collecting cases)). Courts have held that delays of several years in adjudicating immigration benefits are neither unexpected nor unreasonable. Courts within this district have found that waiting times similar or longer than those alleged by Plaintiffs are not unreasonable. *See Vorontsova v. Chertoff*, No. CIV. A. 07-10426-RGS, 2007 WL 3238026, *3 (D. Mass. Nov. 2, 2007) (21-month delay not unreasonable); *Morgovsky v. Dep't of Homeland Sec.*, 517 F. Supp. 2d 581, 585 (D. Mass. 2007) (16-month delay not unreasonable)*; V.U.C.*, 557 F. Supp. 3d at 223-24 (nearly four-year delay not unreasonable). Courts outside this district have held similarly. *See Palakuru*, 521 F. Supp. 3d at 52 (citing *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) ("[T]he twenty-five-month delay at issue here is not unreasonable as a matter of law, given the circumstances."); *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."). As such, the *TRAC* Factors 1 & 2 weigh in favor of the Defendants in this case.

      2.  *TRAC* Factors 3 and 5 – Purported economic harms do not place health and human welfare at stake.

"The third and fifth factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund,*

*Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005).  Plaintiffs point to "significant mental anguish and suffering" due to the "uncertainty" of when they will be able to adjust status and their perceived concern as to the "unfairness" of others who have already obtained LPR status.  Patel Dkt. No. 46, ¶ 100 & Gupta Dkt. No. 13, ¶ 99.  Despite their eligibility for travel authorization, Plaintiffs also complain about vague concerns as to travel restrictions.  Patel Dkt. No. 46, ¶ 189 & Gupta Dkt. No. 13, ¶ 191.  They also raise concerns regarding "professional development" and the costs associated with pursuing lawful status in the United States.  Patel Dkt. No. 46., ¶¶ 101-103 & Gupta Dkt. No. 13, ¶¶ 100-102.

Courts have repeatedly ruled that, under *TRAC*, these types of purported harms are insufficient to satisfy factors three and five.  *See*, *e.g.*, *V.U.C.*, 557 F. Supp. 3d at 223 (explaining that "while plaintiffs' welfare interests are weighty (*TRAC* factors three and five), they are no more so than those of all … petitioners awaiting waitlist adjudication."); *Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *10 (N.D. Cal. June 16, 2021) (explaining that while many of the plaintiffs "attest to the stress they experience as a result of the delay in processing their petitions," these types statements do not constitute a "persuasive showing of prejudice to the kind of serious health and welfare interests"); *Lajin v. Radel*, No. 19CV52-MMA (BLM), 2019 WL 3388363, at *4 (S.D. Cal. July 26, 2019).

As noted by the *Singh* court, "the economic and lifestyle interests that [p]laintiffs put forth do not rise to the level of health and welfare interest that support injunctive relief."  *Singh*, 2022 WL 4094373 at *4.  Or, as explained by another court, the plaintiff "does not allege he cannot find work in *any* position, or that he is barred from working altogether … [plaintiff] continues to enjoy [nonimmigrant] status and remains safely in the United States."  *Aydemir*, 2022 WL 4085846 at *5.  Succinctly explained by another court in finding that these factors favored the government

over a plaintiff faced with a multi-year wait to adjust status: "[Plaintiff] resides in America with his family, and he is not under any immediate threat of removal. He's here, and he isn't going anywhere." *Aljabari v. Mayorkas*, No. 21-cv-6645, 2022 WL 2073047, *5 (N.D. Ill. June 9, 2022).

Plaintiffs also remain in the United States in an authorized period of stay while their AOS applications are pending with full access to employment authorization and the ability to obtain travel authorization. In sum, the purported harms alleged by Plaintiffs are simply insufficient to tip either *TRAC* factors three or five in their favor.

> 3. *TRAC* Factor 4—USCIS' competing priorities weigh against expediting Plaintiffs' applications.

The fourth *TRAC* factor also weighs in USCIS' favor and "ends up altogether dooming Plaintiffs' claims of unreasonable delay." *Xiaobing Liu*, 544 F. Supp. 3d at 13. This factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. In other words, federal courts must consider whether expediting the adjudication of a plaintiffs' applications "harm[s] other agency activities of equal or greater priority." *Desai v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021) (additional citation omitted). Applying this fourth *TRAC* factor, it becomes clear that, overall, there would be nothing gained from the judicial order Plaintiffs seek in their Complaints which would push Plaintiffs' applications to the front of the line and would only slow the adjudication of the other similarly situated applications, including those with older priority dates and for which a visa number is currently available. Said another way, "any time spent on [plaintiffs] application[s] can't be spent on other applications. So making [plaintiffs] wait *less* would mean that someone else has to wait *more*." *Aljabari*, 2022 WL 2073047 at *6 (emphasis in the original).

Indeed, courts in this district and around the country have refused to move a plaintiff "to the front of the line," as doing so would only contribute to, rather than mitigate, the backlog of pending applications. *See V.U.C.*, 557 F. Supp. 3d at 223 ("expediting plaintiffs' petitions would displace other petitioners in the queue who have waited longer for the same relief."); *Morgovsky*, 517 F. Supp. 2d at 585 ("The court simply has insufficient reason to advance Morgovsky to the head of the queue."). The fourth factor weighs in the government's favor because the "relief that [p]laintiffs request would simply leap-frog them to the front of the line, but they make no showing that would justify moving them to the head of the queue, or why their petitions should be processed immediately while other similar-situated petitioners wait their turn." *Singh*, 2022 WL 4094373 at *4 (citation omitted). Said by another court: "No one likes to wait. But no applicant stands in a line of one, especially when seeking something as coveted as permanent residence status in the United States. Lots of people want that, too. And they're in line, too. Thousands of them. …. Applying for permanent residence is not like going to an ATM, where a person can submit a request and receive immediate gratification." *Aljabari*, 2022 WL 2073047 at *4. This factor therefore favors the Defendants in this case as well.

4. *TRAC* Factor 6—USCIS' 'herculean' processing efforts do not amount to impropriety.

The sixth and last *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Conversely, the good faith of the agency in addressing the delay weighs against compelling action. *See In re Am. Fed'n of Gov't Emps.*, 837 F.2d 503, 507 (D.C. Cir. 1988). Though Plaintiffs allege in a conclusory manner that USCIS has acted improperly, they have failed to allege any specific facts to support this contention.

Here, USCIS reviewed and attempted to adjudicate the Patel Plaintiffs' AOS applications but was unable to complete such adjudication due to the lack of the required medical examination form. *See* Patel Dkt. No. 30 at Exh. C. USCIS and DOS acted with diligence and devoted significant resources towards adjudicating AOS applications in FY 2022. *See* Exh. A, Parker Decl., ¶¶ 20, 22-24. Indeed, with the exception of certain EB-5 visas that are reserved by statute, USCIS and DOS utilized the entire allocation of EB visas in FY 2022—281,507, more than double the typical annual total.[17] *Id.*, ¶ 22. USCIS' and DOS' efforts to adjudicate AOS applications in FY 2022 were praised by the American Immigration Lawyers Association ("AILA") as "massive", "herculean" and "tremendous".[18] While Plaintiffs are understandably upset that their AOS applications were not adjudicated in FY 2022, there was no impropriety from USCIS or DOS. Altogether, the *TRAC* factors favor USCIS. Accordingly, Plaintiffs have failed to plausibly plead an unreasonable delay claim. The Court therefore must dismiss the Plaintiffs' third cause of action in their amended Complaints on this basis.

**VII. <u>CONCLUSION</u>**

For the foregoing reasons, the Court should dismiss Plaintiffs' amended Complaints for lack of subject matter jurisdiction and failure to state a claim. Additionally, if this Court determines it has jurisdiction to consider Plaintiffs' partial motion for summary judgment, this

---

[17] *See* USCIS, Fiscal Year 2023 Employment-Based Adjustment of Status FAQs, https://www.uscis.gov/green-card/green-card-processes-and-procedures/fiscal-year-2023-employment-based-adjustment-of-status-faqs (last accessed Nov. 7, 2022).

[18] AILA: Massive Effort by USCIS to Issue Visas Shows Need for Congressional Investment to Catch Up Fully with Backlogs, https://www.aila.org/advo-media/press-releases/2022/massive-effort-by-uscis-to-issue-visas-shows-need (last accessed Nov. 7 2022).

Court should deny such motion as unfounded and unsupported, and instead grant Defendants'

Motion for Summary Judgment as to all Plaintiffs' asserted causes of action.


                                        Respectfully submitted,

                                        RACHAEL S. ROLLINS
                                        United States Attorney

Dated: November 16, 2022        By:     */s/ Mark Sauter*
                                        Mark Sauter
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        1 Courthouse Way, Suite 9200
                                        Boston, MA 02210


## CERTIFICATE OF SERVICE

        I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated:  November 16, 2022       By:     */s/ Mark Sauter*
                                        Mark Sauter
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        1 Courthouse Way, Suite 9200
                                        Boston, MA 02210